UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
AURELIUS CAPITAL MASTER, LTD.,                          :
:
Plaintiff,              :
:           No. 19 Civ. ___
- against -                     :
:           **COMPLAINT**
:
THE REPUBLIC OF ARGENTINA,                              :
:
Defendant.              :
:
------------------------------------------------------------x

Plaintiff Aurelius Capital Master, Ltd. (**"Plaintiff"**), by its undersigned counsel, alleges as follows, based upon knowledge as to its own acts and upon information and belief as to all others:

**Nature of the Action**

1. This is an action for breach of contract brought to recover unpaid amounts due on securities issued by defendant the Republic of Argentina (**"Argentina"**). The securities are the 2005-issued U.S. Dollar-Denominated New York law GDP-Linked Securities (ISIN: US040114GM64) and the 2010-issued U.S. Dollar-Denominated New York law GDP-Linked Securities (ISIN: XS0501197262). These securities are referred to herein respectively as the **"2005 GDP Warrants"** and the **"2010 GDP Warrants,"** and collectively as the **"GDP Warrants"** or the **"Warrants."**

2. Argentina issued the GDP Warrants in 2005 and 2010 as part of exchange offers pursuant to which defaulted debt previously issued by Argentina was exchanged for new securities issued by Argentina. In the exchange offers, holders of defaulted bonds received new bonds representing a steep "haircut" from the face

3409676.1

amount (or interest coupon) of the bonds they were tendering, plus GDP Warrants providing for contingent additional payments based on the performance of the Argentine economy through 2035 (after which the GDP Warrants expire).  In essence, tendering bondholders provided Argentina many billions of dollars of debt relief in return for a participation in the ensuing growth of Argentina's economy.

3. The GDP Warrants were an important part of that bargain.  If Argentina's economy performed well, the holders of the GDP Warrants would be entitled to receive a maximum payout of approximately $8.1 billion.  In fact, the holders of GDP Warrants received payments for six of the first seven years they were outstanding (2005 through 2011, except 2009).  The payments for those six years totaled about $2.9 billion.  Even if the Warrants eventually pay the $8.1 billion maximum payout, that future value would be less than the steep haircuts bondholders took in the 2005 and 2010 exchange offers.

4. The terms of the GDP Warrants contain two tests for determining whether a payment is due in respect of Argentina's economic performance in any given year—what the Warrants refer to as a **Reference Year**.  Those tests both relate to Argentina's real (i.e., in constant prices) gross domestic product (**"GDP"**).  In the first test, Argentina's actual real GDP for the Reference Year must exceed the "base case" real GDP for that year set forth in the Warrant documentation.  In the second test, the growth rate for such actual real GDP as compared to the prior year's actual real GDP must exceed the growth rate for the corresponding base case figures.  If both of these tests are satisfied for a Reference Year, a payment will be due on the Warrants for that

year (up to the $8.1 billion maximum), and the amount of the payment will be determined by a formula set forth in the terms of the Warrants.

5. For Reference Year 2013, these two tests were both satisfied: actual real GDP exceeded the base case GDP, and actual real GDP growth exceeded base case GDP growth. As a result, the Warrants required Argentina to pay $1,321,922,620, or 7.680% of the notional amount of the GDP Warrants. That amount should have been paid on December 15, 2014.[1] Argentina has breached its contractual obligations by failing to make this payment.

6. Plaintiff owns $797,159,198 notional amount of GDP Warrants—$739,559,967 of the 2005 GDP Warrants and $57,599,231 of the 2010 GDP Warrants. For Reference Year 2013, Argentina should therefore have paid $61,222,074 on December 15, 2014 on account of Plaintiff's GDP Warrants. No part of this amount has been paid, and accordingly Argentina currently owes Plaintiff $83,729,993 as of the date of this complaint, taking into account pre-judgment interest under New York law at the statutory rate of 9.0% per annum. Plaintiff therefore seeks judgment for damages in an amount equal to $83,729,993 plus all additional prejudgment interest through the entry of the judgment and post-judgment interest thereafter until payment is made.

---

[1] Plaintiff understands that Argentina or its instrumentalities currently own a substantial portion of the GDP Warrants, so the amount that Argentina owes to holders other than itself is somewhat less than the figure above.

3

3409676.1

**The Parties**

7. Plaintiff Aurelius Capital Master, Ltd. is a Cayman Islands exempted company. It is the beneficial owner of $739,559,967 notional amount of 2005 GDP Warrants and $57,599,231 notional amount of 2010 GDP Warrants.

8. In the Global Security (as defined below) for the GDP Warrants, Argentina expressly acknowledged "the right of any beneficial owner [of GDP Warrants] to pursue [a remedy under the Governing Documents (as defined below)] with respect to the portion of the Global Security that represents such beneficial owner's interest as if Certificated Securities had been issued to such beneficial owner." (2005 Global Security (Exhibit B hereto), § 11; 2010 Global Security (Exhibit D hereto), § 9.) Accordingly, Plaintiff has the right to bring this action on its own behalf to pursue the remedies available to a holder of the Global Security with respect to its beneficial holdings.

9. Defendant the Republic of Argentina is a foreign state as defined in 28 U.S.C. § 1603(a).

**Jurisdiction, Venue and Choice of Law**

10. In the Governing Documents, Argentina explicitly and irrevocably waived sovereign immunity to the fullest extent permitted by the laws of the United States in any action with respect to the GDP Warrants. Thus, Argentina is not entitled to immunity under 28 U.S.C. §§ 1605-1607 or under any applicable international agreement, and this Court therefore has jurisdiction pursuant to 28 U.S.C. § 1330.

11. In the Governing Documents, Argentina irrevocably submitted to the jurisdiction of this Court over any action with respect to the GDP Warrants, and

4

appointed Banco de la Nación Argentina, at its office at 225 Park Avenue, New York, New York 10169, as its authorized agent for service of process.

12. In the Governing Documents, Argentina waived any objection based on venue or otherwise to any action with respect to the GDP Warrants being brought in this Court, and venue is proper in this district pursuant to 28 U.S.C. § 1391(f).

13. Argentina agreed that the Governing Documents shall be governed by, and construed in accordance with, the laws of the State of New York without regard to principles of conflicts of laws.

### Factual Allegations

14. The **"Governing Documents"** for the GDP Warrants include: (i) the Trust Indenture, dated as of June 2, 2005 (a copy of which is attached hereto as Exhibit A); (ii) the 2005 Form of Registered Global Security (the **"2005 Global Security"**), applicable to the 2005 GDP Warrants only (a copy of which is attached hereto as Exhibit B); (iii) the First Supplemental Indenture, dated as of April 30, 2010, applicable to the 2010 GDP Warrants, but not the 2005 GDP Warrants (a copy of which is attached hereto as Exhibit C); and (iv) the 2010 Form of Registered Global Security (the **"2010 Global Security"**), applicable to the 2010 GDP Warrants only (a copy of which is attached hereto as Exhibit D).

15. The 2005 and 2010 Global Securities are substantially the same, and are referred to herein collectively as the **"Global Security."** To the extent not otherwise defined herein, all capitalized terms have the meaning set forth in the Global Security.

16. There are two tests to determine whether Argentina owes a Payment Amount for a particular Reference Year.

17. Under the first test, the Payment Amount for that Reference Year must be determined. The Payment Amount is determined by comparing Actual Nominal GDP to Nominal Base Case GDP for the Reference Year to arrive at Excess GDP, which is then subject to certain further adjustments to arrive at the Payment Amount. If the Payment Amount is not positive, then nothing is due under the GDP Warrants.

18. Under the second test, if the Payment Amount is positive, it is only due if three conditions specified in the Global Security are met—(i) Actual Real GDP exceeds Base Case GDP for the Reference Year; (ii) Actual Real GDP Growth exceeds Base Case GDP Growth for the Reference Year; and (iii) the aggregate payments to date under the GDP Warrants and the Payment Amount do not exceed the Payment Cap.

19. As explained below, for Reference Year 2013, the Payment Amount was positive—$0.07680 per notional dollar of GDP Warrants—and all three conditions were satisfied, so the Payment Amount was due December 15, 2014. Exhibit E, attached hereto, sets forth the calculations with respect to the Payment Amount and the conditions.

*Test 1: The Payment Amount for Reference Year 2013 Was Positive*

20. The Payment Amount is determined on the **Calculation Date**, defined in the Global Security as "for any Reference Year, the 1st of November of the calendar year following such Reference Year"; and payment is supposed to be made on the **Payment Date**, defined in the Global Security as "for any Reference Year, the 15th

6

of December of the calendar year following such Reference Year . . . ."  So for Reference Year 2013, the Calculation Date was November 1, 2014 and the Payment Date was December 15, 2014.

21. The Payment Amount is based upon GDP data published by the National Institute of Statistics and Censuses (known by its Spanish acronym, INDEC), the Argentine government agency officially responsible for publishing economic data for the country.  INDEC publishes data reflecting **Actual Real GDP**, which under the Global Security "means for any Reference Year the gross domestic product of Argentina for such Reference Year measured in constant prices for the Year of Base Prices, as published by INDEC."

22. **Year of Base Prices** as defined in the Global Security "means the year 1993; provided that if the calendar year employed by INDEC for purposes of determining Actual Real GDP shall at any time be a calendar year other than the year 1993, then the Year of Base Prices shall mean such other calendar year."  When the Warrants were issued and the Base Case GDP values were originally set, the Year of Base Prices was 1993.  In 2014, Argentina announced that it was changing the Year of Base Prices to 2004.  As explained below, the Governing Documents set forth an adjustment that should be made to each year's Base Case GDP to reflect this change.  That adjustment is needed to ensure that the comparison of Base Case GDP to Actual Real GDP would be "apples to apples."

23. **Base Case GDP** as defined in the Global Security "means, for any Reference Year, the amount set forth in the chart" in the Global Security.  The chart in the Global Security for the 2005 GDP Warrants starts with Reference Year 2005.

7

The chart in the Global Security for the 2010 GDP Warrants starts with Reference Year 2009, and for that year and all the subsequent years for the duration of the Warrants, the Base Case GDP is the same for the 2005 and 2010 GDP Warrants.

24. As noted above, if the Year of Base Prices changes from the original 1993, the Base Case GDP values must be adjusted. The Global Security prescribes that adjustment in the definition of Base Case GDP:

> if the Year of Base Prices employed by INDEC for determining Actual Real GDP shall at any time be a calendar year other than the year 1993, then the Base Case GDP *for each Reference Year* shall be adjusted to reflect any such change in the Year of Base Prices by *multiplying the Base Case GDP for such Reference Year* (as set forth in chart [contained in the Global Security]) *by a fraction*, the numerator of which shall be the Actual Real GDP for such Reference Year measured in constant prices of the Year of Base Prices, and *the denominator of which shall be the Actual Real GDP for such Reference Year measured in constant 1993 prices*." (Emphasis added.)

Thus, if a change in the Year of Base Prices occurs, then (for any Calculation Date thereafter) the Base Case GDP for any given Reference Year will be adjusted by a ratio of two different measures of Actual Real GDP for that Reference Year—using the revised Year of Base Prices to determine the Actual Real GDP for the numerator, and using the original Year of Base Prices (1993) to determine it for the denominator. If, for example, the change in the Year of Base Prices caused Actual Real GDP for a given year to be 50% higher than it would have been using 1993 prices, Base Case GDP for that year would be adjusted upward by 50%. Because as of the Calculation Date for Reference Year 2013—November 1, 2014—INDEC was employing 2004 as the Year of Base Prices, this adjustment applies to Base Case GDP for Reference Year 2013.

8

25.     For Reference Year 2013, the Base Case GDP figure in the chart in the Global Security is ARS 372.8 billion (Exhibit E, Row 14).  The numerator of the adjustment fraction, as specified in the above-quoted provision, is Actual Real GDP for Reference Year 2013 measured in constant 2004 prices (i.e., ARS 869.5 billion).[2] (Exhibit E, Row 11.)  The denominator is Actual Real GDP for Reference Year 2013 measured in constant 1993 prices (i.e., ARS 491.3 billion).[3]  (Exhibit E, Row 12.)  Thus, the adjustment fraction for Reference Year 2013 is 1.77 (Exhibit E, Row 13), and the Base Case GDP for Reference Year 2013 as so adjusted is ARS 659.7 billion (i.e., ARS 372.8 billion multiplied by 1.77) (Exhibit E, Row 15).

26.     With the Actual Real GDP figures and the adjusted Base Case GDP figures, the Payment Amount for Reference Year 2013 can be calculated.  The first step is to multiply Actual Real GDP and Base Case GDP by the GDP Deflator to determine Actual Nominal GDP and Nominal Base Case GDP, respectively.  The **GDP**

---

[2] After November 15, 2014, INDEC published revised data for Actual Real GDP for Reference Year 2013 measured in constant 2004 prices.  Such revised data would not have been available as of the Calculation Date for Reference Year 2013, and thus would not have been used to determine the Payment Amount for Reference Year 2013.  Even if the revised data were used, rather than the data as of November 15, 2014, the revised data would not materially change the results of the calculation.

[3] For Reference Year 2013, INDEC published Actual Real GDP measured in constant 1993 prices for the first three quarters of the year, but did not publish such data for the full year.  INDEC, however, did publish for the full year 2013 an index of economic activity based upon constant 1993 prices (the **"EMAE Index"**) that took into account the Actual Real GDP data measured in constant 1993 prices published for the first three quarters.  INDEC had published the full-year EMAE Index based on constant 1993 prices for every year from 1993 to 2012, and the full-year EMAE Index for all these years exactly tracks and correlates to full-year Actual Real GDP measured in constant 1993 prices.  (*See* Exhibit F, showing year-over-year growth in the EMAE Index based on constant 1993 prices exactly correlates to year-over-year growth for Actual Real GDP measured in constant 1993 prices).  Since the full-year 2013 EMAE Index based on constant 1993 prices was 4.914% greater than 2012, then full-year 2013 Actual Real GDP measured in constant 1993 prices is necessarily 4.914% greater than 2012.  Thus, based upon data INDEC published, full-year Actual Real GDP for Reference Year 2013 measured in constant 1993 prices was 491.3 billion ARS, i.e., 468.3 billion ARS multiplied by 1.04914.  (Exhibit E, Row 5.)

**Deflator** as defined in the Global Security "means, for any Reference Year, the number that results from dividing (i) the gross domestic product of Argentina for such Reference Year measured at the current prices of such Reference Year, as published by INDEC, by (ii) the Actual Real GDP for such Reference Year."  For Reference Year 2013, Argentina's GDP at current prices as published by INDEC was ARS 3,339.6 billion (Exhibit E, Row 16), and the Actual Real GDP (using 2004 as the now operative Year of Base Prices) was ARS 869.5 billion (Exhibit E, Row 17), so the GDP Deflator for Reference Year 2013 was 3.84 (Exhibit E, Row 18).

27.  **Actual Nominal GDP** as defined in the Global Security "means for any Reference Year an amount equal to Actual Real GDP for such Reference Year multiplied by the GDP Deflator for such Reference Year."  Thus, Actual Nominal GDP for Reference Year 2013 was ARS 3,339.6 billion (i.e., ARS 869.5 billion multiplied by 3.84).  (Exhibit E, Row 16.)

28.  **Nominal Base Case GDP** as defined in the Global Security "means, for any Reference Year, an amount equal to Base Case GDP for such Reference Year multiplied by the GDP Deflator for such Reference Year."  Thus, the Nominal Base Case GDP for Reference Year 2013 was ARS 2,533.7 billion (i.e., ARS 659.7 billion multiplied by 3.84).  (Exhibit E, Row 19.)

29.  The difference between Actual Nominal GDP and Nominal Base Case GDP is Excess GDP.  **Excess GDP** as defined in the Global Security "means, for any Reference Year, the amount (expressed in billions of Argentine pesos), if any, by which Actual Nominal GDP for such Reference Year exceeds the Nominal Base Case GDP for such Reference Year."  Thus, Excess GDP for Reference Year 2013 was ARS

3409676.1

805.9 billion, which represents the difference between Nominal Base Case GDP (ARS 2,533.7 billion) and Actual Nominal GDP (ARS 3,339.6 billion).  (Exhibit E, Row 20.)

30. Excess GDP is then used to calculate Available Excess GDP. **Available Excess GDP** as defined in the Global Security "means, for any Reference Year, an amount in Argentine pesos equal to (i) 5% of Excess GDP for such Reference Year, multiplied by (ii) the Unit of Currency Coefficient."  The **Unit of Currency Coefficient** is defined in the Global Security to be 0.012225.  (Exhibit E, Row 21.) Accordingly, Available Excess GDP for Reference Year 2013 was ARS 0.49260 per $1.00 USD notional of GDP Warrants, *i.e.,* 805.9 multiplied by 0.05 multiplied by 0.012225.  (Exhibit E, Row 22.)

31. With Available Excess GDP, the Payment Amount can be determined.  **Payment Amount** as defined in the Global Security "means for any Payment Date, an amount equal to (i) the Available Excess GDP (converted into U.S. dollars) for the Reference Year corresponding to such Payment Date, multiplied by (ii) the notional amount of this Security outstanding as of such Payment Date. . . ."  To convert Available Excess GDP into U.S. dollars, the Global Security directs the use of the average free market exchange rate of ARS to USD during the 15 days preceding December 31 of the Relevant Reference Year, which for Reference Year 2013 was 6.41407 USD/ARS.  (Exhibit E, Row 23.)  The notional amount of outstanding GDP Warrants was approximately $17.2 billion as of December 15, 2014.  (Exhibit E, Row 26.)  Thus, the Payment Amount for 2013 is $1,321,922,620, *i.e.*, 0.49260 divided by 6.41407 multiplied by $17.2 billion (Exhibit E, Row 27)*,* or $0.07680 per notional dollar of GDP Warrants (Exhibit E, Row 24)*.*  Accordingly*,* the Payment Amount due

11

in respect of Plaintiff's GDP Warrants was $61,222,074, **i.e.,** 0.49260 divided by 6.41407 multiplied by $797,159,198 (Exhibit E, Row 29), before pre- and post-judgment interest.

*Test 2:  All the Conditions for the Payment Amount to Be Due Were Satisfied for Reference Year 2013*

33. Even when a Payment Amount is positive, the Global Security provides that holders of the GDP Warrants are only entitled to receive the Payment Amount in respect of any Reference Year if:  (i) Actual Real GDP was greater than Base Case GDP for such Reference Year, (ii) Actual Real GDP Growth was greater than Base Case GDP Growth for such Reference Year, and (iii) the aggregate payments to date under the GDP Warrants and the Payment Amount do not exceed the Payment Cap.  *See* Exhibit B (2005 Global Security), § 2(b); Exhibit D (2010 Global Security), § 2(b).  For Reference Year 2013, all three of these conditions were satisfied.

33. As to the **first condition**, Actual Real GDP for Reference Year 2013, *i.e.*, ARS 869.5 billion (Exhibit E, Row 30), is greater than Base Case GDP for Reference Year 2013, *i.e.*, ARS 659.7 billion (Exhibit E, Row 31), so the first condition was satisfied.

34. As to the **second condition**, it is necessary to determine whether Actual Real GDP Growth for Reference Year 2013 is greater than Base Case GDP Growth for 2013.

35. **Actual Real GDP Growth** as defined in the Global Security "means, for any Reference Year, the percentage change in Actual Real GDP for such Reference Year, as compared to Actual Real GDP for the immediately preceding Reference Year,

> provided that, if the Year of Base Prices employed by INDEC for determining Actual Real GDP for such Reference Year and for the immediately preceding Reference Year *shall differ*, then Actual Real GDP for the immediately preceding Reference Year shall for this purpose be measured using constant prices for the Year of Base Prices applicable to the Reference Year in respect of which Actual Real GDP Growth is being determined."
> (Emphasis added.)

The above-quoted provision addresses the possibility that, for the Reference Year in question, INDEC may be using a Year of Base Prices that is different than the Year of Base Prices it used for the immediately preceding Reference Year. That is the situation for Reference Year 2013. For Reference Year 2013, INDEC was using 2004 as the Year of Base Prices; but for Reference Year 2012, INDEC had used 1993 as the Year of Base Prices.

36. Accordingly, in order to determine Actual Real GDP Growth for Reference Year 2013, it is necessary to compare Actual Real GDP for Reference Year 2013 to Actual Real GDP for Reference Year 2012 using 2004 as the Year of Base Prices for both. As noted above, INDEC reported Actual Real GDP for Reference Year 2013 measured in constant 2004 prices as ARS 869.5 billion. (Exhibit E, Row 30.) According to INDEC, Actual Real GDP for Reference Year 2012 measured in constant 2004 prices was ARS 844.8 billion. (Exhibit E, Row 6.) Thus, Actual Real GDP Growth for Reference Year 2013 was 2.925% (ARS 869.5 billion divided by ARS 844.8 billion, minus 1). (Exhibit E, Row 32.)

37. **Base Case GDP Growth** as defined in the Global Security "means, for any Reference Year, the percentage change in Base Case GDP for such Reference Year, as compared to Base Case GDP for the immediately preceding Reference Year . . . ." As noted above, when there is a change in the Year of Base

13

Prices, the figure for Base Case GDP in the chart in the Global Security needs to be adjusted.  As explained above, Base Case GDP for Reference Year 2013 after making the adjustment for the change in the Year of Base Prices from 1993 to 2004 is ARS 659.7 billion.  (Exhibit E, Row 31.)

38. Base Case GDP for Reference Year 2012 from the chart in the Global Security needs to be similarly adjusted.  The numerator of the adjustment fraction is Actual Real GDP for Reference Year 2012 measured in constant 2004 prices—ARS 844.8 billion (Exhibit E, Row 6)—and the denominator is Actual Real GDP for Reference Year 2012 measured in constant 1993 prices—ARS 468.3 billion (Exhibit E, Row 7).  Thus, the adjustment fraction for Reference Year 2012 is 1.80.  (Exhibit E, Row 8.)  And, when the Base Case GDP figure in the chart in the Global Security for Reference Year 2012 (ARS 361.1 billion) (Exhibit E, Row 9) is multiplied by this adjustment fraction (1.80), that results in post-adjustment Base Case GDP for Reference Year 2012 of ARS 651.5 billion (Exhibit E, Row 10).  Base Case GDP Growth from 2012 to 2013 is therefore 1.263% (ARS 659.7 billion divided by ARS 651.5 billion, minus 1) (Exhibit E, Row 33), which is less than the Actual Real GDP Growth of 2.925% (ARS 869.5 billion divided by ARS 844.8 billion, minus 1) (Exhibit E, Row 32), and thus the second pre-condition is satisfied.

39. As to the **third condition**, the Global Security defines the **Payment Cap** as "on any given day, an amount equal to [a certain percentage—48.000% for the 2005 GDP Warrants and 40.609% for the 2010 GDP Warrants] of the

notional amount of this Security outstanding as of such day."[4] As of the Calculation Date for Reference Year 2013, 29.960% of the notional amount—or $0.2996 per notional dollar of GDP warrants—remained under the Payment Cap for both the 2005 and 2010 GDP Warrants.  (Exhibit E, Rows 37 & 41.)  Because the Payment Amount for Reference Year 2013—7.680% of the notional amount, or $0.07680 per notional dollar, of GDP Warrants (Exhibit E, Rows 35 & 39)—was well within the remaining Payment Cap, the third condition was satisfied.

### Claim for Relief
(Breach of Contract)

40. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 39.

41. Under the terms of the GDP Warrants, defendant Argentina was contractually obligated to make a Payment Amount of $0.07680 per $1.00 of notional amount of GDP Warrants on December 15, 2014.

42. Defendant Argentina breached its contractual obligations by failing to pay such amount when due in accordance with the terms of the GDP Warrants.

43. As a result of defendant Argentina's breach, Plaintiff is owed, and has suffered damages in an amount to be determined at trial, but not less than $83,729,993 as of the date hereof.

---

[4] The lower Payment Cap for the 2010 GDP Warrants reflects payments made to holders of the 2005 GDP Warrants before the issuance of the 2010 GDP Warrants.  The holders of the 2010 GDP Warrants are not entitled to receive such payments retroactively, but the holders of the 2005 and 2010 GDP Warrants are otherwise treated similarly going forward, so the amount remaining under the Payment Cap is the same for both the 2005 and 2010 GDP Warrants.

15

**Prayer for Relief**

WHEREFORE, Plaintiff requests the entry of judgment against defendant as follows:

(a) Awarding Plaintiff damages equal to $83,729,993, together with additional pre-judgment interest after the date of this complaint and post-judgment interest, as applicable; and

(b) Granting Plaintiff such other legal and equitable relief as the Court deems just and proper.

Dated: New York, New York
January 14, 2019

FRIEDMAN KAPLAN SEILER
& ADELMAN LLP

By: *Edward A. Friedman*
Edward A. Friedman
Daniel B. Rapport
Michael S. Palmieri
7 Times Square
New York, New York 10036
(212) 833-1100

*Attorneys for Plaintiff Aurelius Capital Master, Ltd.*

16

3409676.1